## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRANSPORTATION CONSULTANTS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-922** |
| **CHIQUITA FRESH NORTH AMERICA, L.L.C., ET AL** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment on Equipment-Damage Counterclaim (Doc. 26). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This case arises out of a dispute over allegedly unpaid services rendered by Plaintiff, Transportation Consultants, Inc. ("TCI"), in favor of Defendants, Chiquita Fresh North America, L.L.C.; Chiquita Brands, L.L.C.; and Chiquita Brands International, Inc. (collectively, "Chiquita"). TCI brings claims for suit on open account, breach of contract, unjust enrichment, and promissory estoppel and/or detrimental reliance. Chiquita brings counterclaims against TCI to recover for cargo and equipment damage allegedly caused by TCI. This motion involves Chiquita's equipment damage counterclaim.

In connection with the services that TCI agreed to provide to Chiquita, the parties executed numerous documents. Relevant to this motion is the

1

Container Utilization Agreement ("the Agreement"), executed by the parties on August 20, 2014.[1] The Agreement provides for TCI's use, as a lessee, of Chiquita's equipment for the transportation services rendered by TCI. In its equipment damage counterclaim, Chiquita seeks $25,918.83 in payment, plus interest, from TCI for damages caused to its equipment pursuant to the terms of the Agreement. In the instant motion, Chiquita asks this Court to find that TCI breached its obligation under the Agreement to pay this sum. TCI opposes.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is

---

[1]  Doc. 26-5.
[2]  FED. R. CIV. P. 56.
[3]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4]  *Id.*
[5]  Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[6]  Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).

appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[8] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

Chiquita argues that the Container Utilization Agreement imposes liability on TCI for damage caused to Chiquita's equipment and that TCI breached its obligation under the Agreement to reimburse Chiquita for the damage. Chiquita seeks $25,918.83, plus interest, in damages connected therewith.

Under Louisiana law, there are three elements in a breach of contract claim: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in

---

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[8] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

damages to the obligee."[11] The unambiguous terms of the agreement make TCI responsible for: (1) "all maintenance and upkeep of the tires;"[12] (2) "properly repair[ing] all flats and mak[ing] all necessary repairs" at its own expense;[13] (3) returning damaged tires to Chiquita;[14] (4) replacing or repairing tires damaged as a result of being run flat;[15] and (5) reimbursing Chiquita for the costs of repairs, losses, or cleaning of any damaged container or equipment.[16] The Agreement requires TCI to pay Chiquita within fifteen days of receipt of an invoice.[17]

TCI does not dispute the language contained in the Agreement, conceding that the "document speaks for itself."[18] TCI does not contest the accuracy of the invoices or the legitimacy of the damages upon which the invoices are based. TCI admits that it has not paid the invoices. Instead, TCI avers that it "was not expected to actually pay for . . . damage to the containers,"[19] apparently arguing that it did not undertake any obligation to perform. TCI also argues that even if this Court finds otherwise, the parties' course of dealings nevertheless modified the express terms of the Agreement.

In support, TCI first points to the fact that it "never paid any lease payments under the Container Agreement" and was "not expected to pay a fee for actual use of the containers."[20] TCI asserts that "[l]ikewise, there was no

---

[11] Bellwether Enter. Real Estate Capital v. Jaye, No. CV 19-10351, 2019 WL 6728333, at *3 (E.D. La. Dec. 11, 2019) (citing IberiaBank v. Broussard, 907 F.3d 826, 835 (5th Cir. 2018)) (internal quotation marks omitted).

[12] Doc. 26-5 at 3 ¶ 3(b).

[13] *Id.*

[14] *Id.* ¶ 3(c).

[15] *Id.* ¶ 3(d).

[16] *Id.* at 6 ¶ 8(c).

[17] *Id.* at 3 ¶ 4(a), 6 ¶ 8(c).

[18] Doc. 29 at 4.

[19] *Id.*

[20] *Id.*

expectation for TCI to pay for the type of minor equipment damage claims that Chiquita is now seeking."[21] That the Agreement is silent as to lease payments does not serve to negate the express, unambiguous provisions therein. TCI, in essence, asks this Court to find that the parties' contractual silence on lease payments renders other aspects of the Agreement—like the equipment damage provisions—ineffective. TCI provides no law in support of this position. This interpretation is illogical to the Court, and the Court declines TCI's invitation to read deeply into the Agreement's silence and ignore entirely the Agreement's clear and unambiguous terms.[22]

TCI next points to the deposition testimony of its President, Jeff Louis, to support its contention that there is a factual dispute as to the parties' intent. Mr. Louis testified that his understanding was that TCI "would not be liable for damages . . . at all"[23] and that it would "not be charged for any repairs."[24] As Chiquita correctly notes, however, "[i]f a court finds the contract to be unambiguous, it may construe the intent from the face of the document— without considering extrinsic evidence—and enter judgment as a matter of law."[25] Moreover, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[26] Thus, while the Court appreciates Mr. Louis's current interpretation of the Agreement, his deposition testimony does not create a genuine dispute of material fact. The terms of the Agreement are express and unambiguous, and Mr. Louis's self-serving testimony does not

---

[21] *Id.*
[22] The Court notes that TCI contradicts the premise for its own argument, noting that, "pursuant to Schedule 1 of the Container Agreement, TCI's use of the containers was free of charge, *unless TCI held them longer than allowed.*" *Id.* (emphasis added).
[23] *Id.* at 4–5.
[24] *Id.* at 6.
[25] In re Liljeberg Enters., Inc., 304 F.3d 410, 439 (5th Cir. 2002) (brackets in original).
[26] LA. CIV. CODE art. 2046.

negate those unambiguous terms. Further, Mr. Louis also testified that "[TCI] would just be responsible for blatant disregard of Chiquita equipment."[27] Thus, even if this Court considers the testimonial evidence proffered by TCI, it supports an interpretation of the Agreement that would render TCI liable to Chiquita for at least some equipment damage.

Lastly, TCI points to the timing of Chiquita's invoices for equipment damage to argue that the course of the parties' dealings modified the terms of the Agreement. TCI essentially argues that because Chiquita did not send TCI any equipment damage invoices for more than two years after executing the agreement, this inaction modified the Agreement to nullify the provisions regarding payment for equipment damage. While it is true that "[p]arties to a contract may by subsequent conduct in their mode of dealings with each other under it, modify its terms or waive its conditions, expressly or tacitly," such is not the case here.[28] First, the Agreement states that "[f]ailure of Chiquita to insist upon the performance of any provision of this Agreement or to exercise any right or remedy available to Chiquita pursuant to this Agreement shall not constitute a waiver of any other provisions of the Agreement or of any subsequent right or remedy."[29] Second, as Chiquita points out, when the terms of a contract are unambiguous, as is the case here, "the parties' course of conduct cannot be considered to determine the meaning of the contract."[30]

TCI opposes Chiquita's counterclaim on the grounds that: (1) the parties did not intend for TCI to pay Chiquita for equipment damage and (2) the parties' course of dealings modified the contract to nullify TCI's obligations to

---

[27] Doc. 29 at 5.
[28] Factor King, LLC v. Block Builders, LLC, 193 F. Supp. 3d 651, 656 (M.D. La. 2016) (citing Bacas v. Mandot, 3 Teiss. 324, 327 (La. Ct. App. 1906)).
[29] Doc. 26-5 at 9 ¶ 13.
[30] Gen. Accident Ins. Co. v. United/Waterford-Fair Oaks, Ltd., 288 F.3d 651, 657 (5th Cir. 2002).

Chiquita. Having rejected these arguments, the Court finds that the Agreement created an obligation for TCI to pay or reimburse Chiquita for damages or repairs made to Chiquita's equipment. TCI admits that it has not paid Chiquita for the invoices rendered under the Agreement, and so the Court accordingly finds that TCI breached its obligation under the contract. The Court also finds that this breach resulted in damages to Chiquita in the amount of $25,918.83.[31]

Chiquita's counterclaim, however, also seeks interest. Chiquita cites Louisiana Civil Code article 2000, which states:

> When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by [Louisiana] R.S. 9:3500. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more.

Because the object of TCI's performance is for a sum of money, the Court finds that Chiquita is also entitled to interest to the extent permitted by article 2000.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on Equipment-Damage Counterclaim (Doc. 26) is **GRANTED**. Defendants are entitled to judgment in the amount of $25,918.83, plus interest, from TCI for breach of contract under the Container Utilization Agreement.

---

[31] The Court again notes that TCI does not dispute the accuracy of the individual invoices or the total amount of damages claimed.

New Orleans, Louisiana this 14th day of May, 2020.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**