## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRANSPORTATION CONSULTANTS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-922** |
| **CHIQUITA FRESH NORTH AMERICA, L.L.C., ET AL** | **SECTION "H"** |

### ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment on the Recovery of Attorney's Fees (Doc. 24). For the following reasons, the Motion is **GRANTED IN PART**.

### BACKGROUND

This case arises out of a dispute over allegedly unpaid services rendered by Plaintiff, Transportation Consultants, Inc. ("TCI"), in favor of Defendants, Chiquita Fresh North America, L.L.C.; Chiquita Brands, L.L.C.; and Chiquita Brands International, Inc. (collectively, "Chiquita"). TCI brings claims for suit on open account, breach of contract, unjust enrichment, and promissory estoppel and/or detrimental reliance. Chiquita brings counterclaims against TCI to recover for cargo and equipment damage allegedly caused by TCI. In the instant motion, Chiquita seeks dismissal of TCI's claim for attorney's fees.

In connection with the services that TCI agreed to provide to Chiquita, the parties executed numerous documents. The parties first executed a

Container Utilization Agreement on August 20, 2014.[1] This agreement governs TCI's use of equipment owned by Chiquita. The parties also executed a Carrier Agreement on August 29, 2014.[2] This agreement governs "motor carrier services" that TCI performed for Chiquita, including "temperature controlled service; loading and delivery by specific appointments, including nights and weekends; team services; trailer pools for loading and unloading; and other such services as Chiquita and [TCI] may from time to time agree to."[3] Finally, on September 1, 2015, the parties executed a Container Drayage, Warehouse Services, and Container Depot Agreement ("Container Drayage Agreement").[4] This agreement governs TCI's container drayage, transloading, warehousing, and container depot services.

On October 22, 2014, Steve Lohman, former Senior Transportation Manager for Chiquita, signed an Application for Credit form bearing TCI's logo and name.[5] The Application for Credit is blank except for the date and Lohman's signature and title. Directly above the signature line is a provision that states, in pertinent part:

> I FURTHER CERTIFY THAT I HAVE RECEIVED AND READ THE MOTOR FREIGHT RULES CIRCULAR AND CONTRACT TERMS AND CONDITIONS FOR MERCHANDISE WARE-HOUSEMEN AND UNDERSTAND THAT TERMS AND CONDITIONS, INCLUDING BUT NOT LIMITED TO PER DIEM RESPONSIBILITY, FUEL SURCHARGES, DEMURRAGE, RAIL STORAGE, DAMAGES, AND OTHER ASSESSORIAL CHARGES ARE GOVERNED BY THE REFERENCED ABOVE AND IS AVAILABLE AT WWW.TCITRUCKING.COM.[6]

---

[1] Doc. 24-5.
[2] Doc. 24-6.
[3] *Id.* at 2.
[4] Doc. 24-7.
[5] Doc. 1-2 at 40.
[6] *Id.*

The Rules Circular that is referenced in the Application for Credit provides, in pertinent part, that TCI

> will assess one and one-half percent (1 ½%) per month on past due indebtedness for collection, handling, late fees and interest. In the event [TCI] deems it necessary to retain the service of legal counsel to collect any outstanding indebtedness, shipper shall pay attorneys' fees in the amount of $500.00 or thirty-three percent (33%), whichever is greater.[7]

In addition to the attorney's fees provision in the Rules Circular, TCI also relies on Louisiana's Open Account statute for its claim of attorney's fees. In the instant motion, Chiquita argues that TCI's claims for attorney's fees fail as a matter of law because the Rules Circular and Louisiana's Open Account statute do not provide for such relief. TCI opposes.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[9] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws

---

[7] *Id*. at 36.
[8] FED. R. CIV. P. 56.
[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[10] *Id*.

all reasonable inferences in his favor.[11] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[12] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[13]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[14] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[16]

## LAW AND ANALYSIS

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[17] TCI bases its claim for attorney's fees on two grounds: (1)

---

[11] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[12] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[13] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[14] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[15] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[16] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[17] Gahagan v. U.S. Citizenship & Immigration Servs., 911 F.3d 298, 300 (5th Cir. 2018) (citing Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2164 (2015)).

Louisiana's Open Account Statute and (2) provisions contained in the Rules Circular. The Court will address each.

## I.   Recovery under Louisiana's Open Account Statute

The Court will first address TCI's claim for attorney's fees under Louisiana's Open Account Statute. Louisiana's Open Account Statute provides:

> When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.[18]

In order to recover attorney's fees under the statute, a creditor must first submit a written demand *correctly* setting forth the amount owed to the debtor.[19] The Louisiana Supreme Court has previously held that the statute must be strictly construed because it is penal in nature, and therefore, the amount due in the demand letter must be correctly stated.[20] In *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, the Louisiana Supreme Court held that, where a demand letter includes an incorrect amount of interest added to the amount due, this is enough to disallow a claim for attorney's fees under the statute, clarifying that the reason for the error in the demand letter is immaterial.[21]

Here, TCI relies upon a demand letter it sent to Chiquita on October 15, 2018. Chiquita asserts that the demand letter contains "an invoice that TCI has now admitted was in fact paid by Chiquita."[22] TCI does not dispute that the demand letter includes an invoice "T420027" for $3,375 and that Chiquita

---

[18] LA. REV. STAT. § 9:2781(A).
[19] Newman v. George, 968 So. 2d 220, 225 (La. App. 4 Cir. 2007).
[20] Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So. 2d 1014, 1015 (La. 1984).
[21] *Id*. at 1016.
[22] Doc. 24-1 at 8.

did pay that invoice.[23] Indeed, TCI fails to address altogether Chiquita's legal arguments against TCI's purported right to collect attorney's fees under the statute. Accordingly, this Court finds that the demand letter contained at least one error, and because the statute must be strictly construed, it does not provide a proper basis for TCI to seek payment of attorney's fees from Chiquita.

## II.   Recovery under the Rules Circular

TCI next bases its claim for attorney's fees on a provision contained in the Rules Circular. As explained earlier, the Rules Circular is referenced in a blank Application for Credit signed by a Chiquita representative. The Rules Circular requires the "Carrier" to pay TCI a portion of its attorney's fees if TCI has to retain legal counsel to collect any outstanding indebtedness from the Carrier.[24] Chiquita makes three arguments for why the Rules Circular and its attorney's fees provision do not apply: first, that the Application for Credit was not properly executed; second, that the Application for Credit limits the applicability of the Rules Circular to "transaction types not at issue here;"[25] and third, that the written agreements entered into by the parties governing the services for which TCI seeks compensation contain provisions that limit the applicability of the Rules Circular. The Court will take each of these arguments in turn.

### A. Whether the Application for Credit was Properly Executed

Chiquita takes issue with TCI's contention that the Application for Credit binds Chiquita to the terms of the unattached Rules Circular. Chiquita cites the fact that the Application for Credit is not signed by TCI and is instead only signed by Steve Lohman, a former employee of Chiquita, "without

---

[23] Doc. 24-2 at 3 ¶¶ 26–27; Doc. 31-1 at 3 ¶¶ 26–27.
[24] Doc. 1-2 at 36.
[25] Doc. 24-1 at 10.

reference to any Chiquita entity on whose behalf he may be signing."[26] TCI argues that such form requirements are not necessary to effectuate the contractual aspects of the Application for Credit, including the applicability of the Rules Circular. TCI also notes that the Carrier Agreement was signed by Steve Lohman and that Chiquita makes no argument that the Carrier Agreement is unenforceable.

This Court finds that the signed Application for Credit binds Chiquita to the terms of the referenced Rules Circular. "A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent."[27] Indeed, "there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made."[28] The Court finds that Steve Lohman's signature on the Application for Credit functions as an acceptance of the terms of the Application for Credit. Chiquita points this Court to no law or judicial precedent mandating heightened form requirements to make the Application for Credit binding on the parties. Nor does Chiquita assert that a vice of consent exists that would render the acceptance of the terms of the Application for Credit null.

Chiquita's argument that Steve Lohman lacked the capacity to bind Chiquita to a contract is disingenuous. Indeed, Chiquita urges this Court to find that the Carrier Agreement—also signed by Steve Lohman on behalf of Chiquita—is binding between the parties and takes precedence over the

---

[26] *Id*. at 4.
[27] LA. CIV. CODE art. 1927.
[28] *Id*.

Application for Credit. If Mr. Lohman's signature is sufficient to bind Chiquita to the terms of the Carrier Agreement, then it likewise is sufficient to bind Chiquita to the terms of the Application for Credit. Further, by signing the Application for Credit, Mr. Lohman certified that he was "AN AUTHORIZED REPRESENTATIVE AND FULLY CHARGED WITH THE ABILITY TO SIGN, AGREE TO AND SUBMIT THIS APPLICATION FOR CREDIT."[29]

Having found that the Application for Credit is a legitimate contract that binds Chiquita to the terms of the Rules Circular, the Court next analyzes if the Application for Credit itself contains any terms that would limit the application of the Rules Circular.

## B. Whether the Application for Credit Limits the Applicability of the Rules Circular

The provision in the Application for Credit that references the applicability of the Rules Circular states:

> I FURTHER CERTIFY THAT I HAVE RECEIVED AND READ THE MOTOR FREIGHT RULES CIRCULAR AND CONTRACT TERMS AND CONDITIONS FOR MERCHANDISE WARE-HOUSEMEN AND UNDERSTAND THAT TERMS AND CONDITIONS, INCLUDING BUT NOT LIMITED TO PER DIEM RESPONSIBILITY, FUEL SURCHARGES, DEMURRAGE, RAIL STORAGE, DAMAGES, AND OTHER ASSESSORIAL CHARGES ARE GOVERNED BY THE REFERENCED ABOVE AND IS AVAILABLE AT WWW.TCITRUCKING.COM.[30]

Chiquita asserts that this provision limits the application of the Rules Circular, rendering it inapplicable to "TCI's transportation or warehousing services and invoices."[31] Chiquita fails to elaborate how this provision limits the application of the Rules Circular "to transaction types not at issue here."[32]

---

[29] Doc. 1-2 at 40.
[30] *Id.*
[31] Doc. 24-1 at 5.
[32] *Id.* at 10.

Presumably, Chiquita interprets the phrase "per diem responsibility, fuel surcharges, demurrage, rail storage, damages, and other assessorial charges are governed by the referenced above" as being an exclusive list of issues to which the Rules Circular applies. However, that phrase is preceded by the crucial language of "including but not limited to." Accordingly, this Court finds that the itemized list of services functions as an illustrative, rather than exhaustive, list of services for which the Rules Circular applies. Thus, Chiquita's argument that the Rules Circular only applies to "transaction types not at issue here" fails.

This does not end the inquiry, however. While the terms of the Rules Circular may be binding on Chiquita through the mechanism of the signed Application for Credit, the parties also executed other, equally binding agreements as well. The Court will now analyze whether any of those agreements limit the applicability of the Rules Circular.

### C. Whether Any Other Agreements Governing TCI's Services Limit the Applicability of the Rules Circular

The parties executed three agreements in connection with the services that TCI would render in favor of Chiquita: (1) the Container Utilization Agreement, (2) the Carrier Agreement, and (3) the Container Drayage Agreement. There is a factual dispute regarding which agreement, if any, governs the multitude of allegedly unpaid services that TCI performed. Thus, if TCI seeks compensation for services rendered under a particular contract, this Court must assess that contract to see if there are terms contained therein that would limit the ability of TCI to use the Rules Circular as a basis for collecting attorney's fees.

The Court first notes that it is undisputed that TCI's claims for unpaid services do not include any services it may have performed under the

Container Utilization Agreement.[33] Thus, the Court need not consider the applicability of the Rules Circular's attorney's fees provision to services rendered by TCI under the Container Utilization Agreement.

The Court next notes that, in addition to the three aforementioned agreements, TCI asserts that some of the services it performed, like short shuttle moves at Chiquita's Gulfport yard, are "governed under a separate hourly rate agreed to between TCI and Chiquita after Chiquita left New Orleans in or around August/September of 2016."[34] TCI fails to provide the Court with any tangible evidence of this purported agreement, and it fails to clarify if any of the three aforementioned agreements govern the "intermodal and shuttling operations" it performed.

Thus, in connection with TCI's claims for unpaid services, there is a factual dispute about which of the following agreements govern TCI's services: (1) the Carrier Agreement, (2) the Container Drayage Agreement, or (3) an oral agreement or an agreement not before the Court. This ambiguity is important because, as will be discussed below, the applicability of the Rules Circular (and its provision providing for attorney's fees and interest) is dependent upon the existence of any limiting provisions in the Carrier Agreement, the Container Drayage Agreement, or some other agreement.[35]

Keeping in mind the outstanding factual dispute regarding which agreement governs the allegedly unpaid services, the Court now turns to the

---

[33] Doc. 24-2 at 3 ¶ 22 ("TCI's claims and invoices are governed by the Carrier Agreement and the Container Drayage Agreement."); Doc. 31-1 at 2 ¶ ("Disputed. TCI's claims are also governed under the Rules Circular. TCI is also seeking payment for services performed in intermodal and shuttling operations at Chiquita's Gulfport facility, that are not the type of long-haul carrier services covered under the Carrier Agreement.").

[34] Doc. 31 at 4.

[35] The Court notes that any additional agreements between the parties that have not been presented to the Court may also contain operative limiting provisions.

agreements to determine if they limit in any way the applicability of the Rules Circular.

### 1. Carrier Agreement

The Carrier Agreement was executed on August 29, 2014.[36] It has three relevant provisions that impact TCI's purported right to recover attorney's fees incurred in connection with collecting a debt for services rendered under this contract. The first relevant provision governs appendices to the Carrier Agreement. It states: "Subsequent to the execution [of the Carrier Agreement] by Chiquita and Carrier, further addenda may be added hereto and also shall become a part hereof. Each addendum shall be executed by an authorized officer of each party and dated."[37]

The second relevant provision governs the relationship between the Carrier Agreement and other agreements between the parties. It states: "This Agreement and the attached Appendices represent the entire understanding of the parties. All prior discussions, understandings, negotiations and agreements are merged herein. All prior oral or written agreements between the parties are hereby cancelled."[38]

The third relevant provision governs amendments to the Carrier Agreement. It states: "Unless otherwise specifically stated herein, this Agreement and all Appendices attached hereto cannot be amended except in writing signed by both parties."[39]

There are no provisions in the Carrier Agreement that would permit TCI to collect attorney's fees from Chiquita incurred in bringing suit to recover

---

[36] Doc. 24-6 at 2.
[37] *Id*. at 11 ¶ 13.1.
[38] *Id*. at 13 ¶ 13.11.
[39] *Id*. ¶ 13.12.

payment for services performed under that agreement.[40] Further, the Carrier Agreement limits the Court's ability to look beyond it for a source that would permit TCI to collect attorney's fees because the Carrier Agreement "represent[s] the entire understanding between the parties."[41] Neither party presents this Court with any purported appendix to the Carrier Agreement that provides for the relief TCI seeks. Nor do the parties present any purported amendments.

The parties do present two extrinsic documents for this Court to consider, however: the Application for Credit and the Rules Circular. The Application for Credit is signed by a former Chiquita employee and dated after the Carrier Agreement. The Application for Credit cannot be interpreted as a valid addendum to the Carrier Agreement because it is not executed by "an authorized officer of *each* party,"[42] as the express terms of the Carrier Agreement require. Nor can it be interpreted as a valid amendment to the Carrier Agreement because it is not a "writing signed by *both* parties,"[43] as the Carrier Agreement expressly requires. The Rules Circular lacks a signature entirely, and therefore, it cannot be interpreted as an amendment or an addendum to the Carrier Agreement.

Accordingly, the Court finds that the Carrier Agreement does not provide for TCI to recover attorney's fees in an action to collect on unpaid services rendered under the Carrier Agreement. Any claim for attorney's fees that TCI raises in connection with an action to recover for unpaid services under the Carrier Agreement must, therefore, be dismissed with prejudice.

---

[40] The Carrier Agreement does contain a provision that allows for Chiquita to collect attorney's fees if it has to recover "costs incurred in collecting its claim." *Id*. at 8 ¶ 8.6.
[41] *Id*. at 13 ¶ 13.11.
[42] *Id*. at 11 ¶ 13.1 (emphasis added).
[43] *Id*. at 13 ¶ 13.12 (emphasis added).

## 2. Container Drayage Agreement

The Container Drayage Agreement was executed on September 1, 2015—*after* the Application for Credit was executed. Because the Application for Credit was executed before the Container Drayage Agreement, the Rules Circular was in effect at the time of the execution of the Container Drayage Agreement. TCI notes that the Rules Circular mandates that "[e]ach provision of this rules circular shall apply to each transportation agreement entered into the carries [sic] unless expressly waived in a signed, written agreement."[44] Accordingly, the provision in the Rules Circular that allows TCI to collect attorney's fees "shall apply" to the later-executed Container Drayage agreement—a "signed, written agreement."

The Court is unable to locate any provision in the Container Drayage Agreement that functions to waive the attorney's fees provision in the Rules Circular. Nor can the Court locate a provision that would prohibit TCI from collecting attorney's fees in connection with services rendered under the contract.

Chiquita argues that the following provision in the Container Drayage Agreement prohibits TCI from collecting attorney's fees under the Rules Circular: "No modified, additional or different terms, conditions or provisions shall be applicable to TCI and Chiquita, unless specifically agreed to in writing by the President of TCI."[45] The Court does not read this provision as having some kind of retroactive effect against contracts previously executed; rather, the Court reads this provision as applying to prospective agreements that the parties may enter into in the future. Nor does this Court interpret this provision as an express waiver of TCI's right to collect attorney's fees.

---

[44] Doc. 1-2 at 16 ("Item 120").
[45] Doc. 24-7 at 4.

Lastly, Chiquita argues that the Rules Circular only "applies to 'Truckload Line Haul and Intermodal Freight' and 'transportation agreements.'"[46] Indeed, the Rules Circular mandates that "[e]ach provision of this rules circular shall apply to each *transportation agreement* entered into the carries [sic] unless expressly waived in a signed, written agreement."[47] The Court finds merit in Chiquita's argument and finds that this provision presents yet another issue of fact—whether the Container Drayage Agreement is a transportation agreement.

Accordingly, the Court finds that the Container Drayage Agreement does not prohibit or limit TCI's right, as provided for in the earlier-executed Rules Circular, to recover attorney's fees in an action to collect on unpaid services rendered under the Container Drayage Agreement. However, there is a factual issue regarding whether the Container Drayage Agreement is a transportation agreement. If the Container Drayage Agreement is properly classified as a transportation agreement, then TCI's claim for attorney's fees in connection with an action to recover for unpaid services under the agreement is viable. If the Container Drayage Agreement is not classified as a transportation agreement, then the Rules Circular do not attach to it, and TCI lacks a contractual basis for the collection of attorney's fees in connection with claims to recover for unpaid services rendered under the contract.

### 3. Other Agreement(s)

Finally, TCI asserts that the parties entered into an additional, separate agreement that governed "yard moves," and it claims that "a large portion of the services on the past due account" are for services rendered under this

---

[46] Doc. 39 at 4.

[47] Doc. 1-2 at 16 ("Item 120").

agreement.[48] TCI fails to note if this agreement is written or oral, and it provides limited information about the content of the agreement. Apparently, the agreement was executed "in or around August/September 2016" and provides for a $75 per hour rate for short shuttle moves at Chiquita's Gulfport yard.

The Rules Circular predates this "yard moves" agreement and therefore was in effect at the time this purported agreement was executed. Because the Rules Circular mandates that "[e]ach provision of this rules circular shall apply to each transportation agreement," TCI's claim for attorney's fees under this agreement are dependent upon a finding that it is a transportation agreement. TCI asserts that this agreement is for "intrastate transportation services," which would classify it as a transportation agreement and make it amenable to the Rules Circular.  Chiquita disputes and instead argues that "yard moves" are not transportation services subject to the Rules Circular.  The Court thus finds that this dispute constitutes another issue of fact—whether the "yard moves" agreement is a transportation agreement.

Assuming this agreement is a transportation agreement, then the Rules Circular would apply. The Rules Circular requires an express, signed, and written waiver to nullify any of its provisions. The Court is not presented with a tangible, written version of this "yard moves" agreement, and therefore, does not find that it sufficiently waives TCI's right to collect attorney's fees in connection with collecting payment for unpaid services rendered under it. Accordingly, TCI's claims for attorney's fees in connection with this "yard moves" agreement remains viable—if the agreement is a transportation agreement. If this agreement is not a transportation agreement, then TCI lacks

---

[48] Doc. 31 at 4.

a contractual basis for its claim for attorney's fees in connection to lawsuits seeking to recover for unpaid services rendered under the agreement.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment on the Recovery of Attorney's Fees (Doc. 24) is **GRANTED IN PART**.

TCI can recover attorney's fees in connection with its claims against Chiquita for unpaid services rendered under the Container Drayage Agreement and the "yard moves" agreement—subject to a factual finding that they are properly classified as "transportation agreements," pursuant to the terms of the Rules Circular. TCI cannot recover attorney's fees in connection with its claims against Chiquita for unpaid services rendered under the Carrier Agreement, and such claims for attorney's fees are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 5th day of June, 2020.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**